CITIZENS' STATE BANK OF ALVIN v. JOPLIN. (No. 243.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 2, 1917. Rehearing Denied Nov. 14, 1917.)

1. EQUITY ⊕=409—APPOINTMENT OF MASTER —CONCLUSIVENESS OF FINDINGS.

Where the court, acting upon its own initiative, appointed a master in chancery, the findings of the master, specifically excepted to and presented to the court, which heard other testimony with reference to the matters in controversy, were not binding and final upon the court either at law or in equity.

2. EQUITY ⊕=395—MASTER'S DUTIES.

Where the duties of the master in chancery are not fully set out or indicated by the court's appointing order, such duties are to assist the court, but in no wise to supersede its action.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Receivership proceedings against the Alvin-Japanese Nursery Company, wherein S. B. Brown was appointed receiver, Paul W. Joplin succeeding him, and the Citizens' State Bank of Alvin, a petitioning creditor, filed a plea of intervention asking judgment and foreclosure of lien. From a decree for the receiver, the intervening bank appeals. Affirmed.

Thos. H. Stone and H. E. Stephenson, both of Houston, and A. M. Poland, of Alvin, for appellant. Sam, Bradley & Fogle, of Houston, for appellee.

BROOKE, J. The receivership proceedings were instituted by the Citizens' State Bank, appellant herein, and several other creditors of the Alvin-Japanese Nursery Company, on September 9, 1914. On the

same day the Nursery Company filed an answer admitting the matters alleged in the petition, and an order was entered appointing S. B. Brown receiver. On February 4, 1915, appellant, who had been one of the petitioning creditors, filed a plea of intervention, in which it asked judgment for $6,000, interest and attorney's fees, upon the note sued on, and a foreclosure of a lien upon a crop of rice, and the proceeds thereof, and upon property described in several mortgages and a deed of trust. Appellant alleged that the rice had been sold, and that the proceeds had been deposited with the appellant bank, and that the proceeds had been all checked out by the receiver, except a sum which was less than sufficient to pay the $6,000 note sued on. The several mortgages and deed of trust were attached to the petition as exhibits.

In his answer the receiver alleged that prior to the execution of the note for $6,000, the Nursery Company was indebted to appellant bank in the sum of $5,450; that an agreement had been made between appellant and the Nursery Company and others of its creditors that no preference or security should be given to any of the creditors; that the Nursery Company needed $550 to complete harvesting its crop, and that it was agreed between appellant and the Nursery Company that said mortgage on the rice crop, while nominally securing the payment of the whole $6,000, should really be held to secure only the $550 then advanced, and should be released upon the repayment of said sum and interest thereon; that the mortgage was given for the whole $6,000, as an accommodation to the bank, appellant herein, and that upon the repayment of the sum then loaned the note and mortgage should be canceled and that the bank should retain its old security for the payment of the old indebtedness, less such pro rata part of the balance to which said bank should be entitled in an equal distribution by the Nursery Company to its creditors. The receiver tendered the sum of $550, with interest, and asked that the note and mortgage be canceled.

There was no special order of reference of this intervention. Shortly after the appointment of the receiver and before the filing of this intervention, the court entered the following order:

"September 15, 1914, T. C. Ford appointed master in chancery to whom all interventions are referred."

The master in chancery reported on June 10, 1915, finding that the note and mortgage were given to secure the payment of the whole indebtedness of $6,000, and that the indebtedness was further secured by the chattel mortgage and deed of trust set out in intervener's petition. The receiver duly excepted to the findings of the master, and

upon a hearing before the court, upon the evidence introduced before the master and additional testimony taken August 24, 1915, at the suggestion of the trial judge in the absence of the master and after his report had been filed. A decree was entered finding that the mortgage on the rice crop was intended to secure the sum of $550, and directing the bank to pay over to the receiver the balance in its hands, after the payment of said sum of $550, interest and attorney's fees, and foreclosing the mortgages on the live stock and other properties described in the old mortgages.

The findings of fact and conclusions of law are as follows:

### "Findings of Fact.

"(1) The court finds that on August 30, 1914, the Alvin-Japanese Nursery Company was indebted to the Citizens' State Bank of Alvin, Tex., in approximately the sum of $5,450, then due for which the bank held notes of said Nursery Company, and held as security two deeds of trust upon the live stock and land described in intervener's petition. On that day the bank loaned to the Nursery Company an additional $550 to enable the Nursery Company to harvest the rice crop, making, with interest, a total indebtedness of $6,000, which would be due October 1, 1914.

"(2) I find that at the time of the execution of the $6,000 note the Nursery Company owed numerous creditors obligations amounting to about $100,000; that there had been a meeting of the creditors of the Nursery Company in March, 1914, attended by a representative of the intervener bank, at which meeting an agreement was proposed that, if the consent of all the creditors of the Nursery Company could be secured, the creditors would extend the time of payment of their respective claims to December 31, 1914, and that the Nursery Company should not give any preference or make any payments to any of the creditors in the meantime. This contract was signed by the intervener bank, but was never acquiesced in by all of the creditors, there being one or two of the creditors who had refused to sign the agreement at the time of the execution of the note and mortgage in question, though the committee, appointed at the meeting of the creditors and representing them, had not abandoned their efforts to secure their signatures. It does not appear that any preferences were given or payments made by the Nursery Company to creditors in the meantime, but one of the creditors who had not signed the agreement was threatening to attach the property of the Nursery Company.

"(3) I find that before the execution of the note and mortgage in question, the state bank examiner had demanded of the intervener bank that the loan of the Alvin-Japanese Nursery Company be got off the books of the bank, and the bank was anxious that its books should show that the debt had been paid.

"(4) I find that at the time of the execution of the note for $6,000 and the mortgage on the rice crop described in intervener's petition, intervener bank agreed with the Nursery Company, at the time of the execution of said note and mortgage, and as a part of the same transaction, that the note for $6,000 was to be paid by the Nursery Company out of the proceeds of the rice, and that the bank would reloan to the Nursery Company, upon the security already held by it, the amount of the original debt, or $5,450, less what should be the bank's proportionate part of the anticipated distribution by the Nursery Company to its creditors of any moneys that would be available for that purpose, the understanding and agreement being that the matter should be so arranged, in order that the books of the bank should show that the debt had been paid and a new loan made upon the original security, so that the state bank examiner, or the department of insurance and banking, would be satisfied. I find that such payment of the note of $6,000 was intended as a matter of form, but that the real transaction should be the payment of the new loan of $550 and a continuance of the old indebtedness upon the original security, less the bank's pro rata of any distribution which the Nursery Company could make.

"(5) In the negotiations which culminated in the execution of the note for $6,000 and mortgage on the rice crop, it was discussed and agreed by the representatives of the bank and the Nursery Company that no preference or advantage should be given to the bank over the other creditors, but that, as to the old loan, the relations of the bank and Nursery Company should remain the same, except as to any proportionate distribution made to the creditors.

"(6) I find that the Alvin-Japanese Nursery Company was placed in the hands of a receiver by an order of this court on September 9, 1914, upon the application of the Citizens' State Bank and other creditors.

"(7) I find that on January 16, 1915, the receiver had to his credit in the intervener bank $6,561.67, and that the bank charged that sum off against said receiver and placed the same to its own credit; that at the time of charging off said sum, the $550 loan, with interest and attorney's fees, amounted to $622.65. Thereafter, upon order of the court, the bank paid out $300, for which it is entitled to credit.

### "Conclusions of Law.

"I conclude from the foregoing findings of fact as follows:

"(1) That the law, looking through the form to the substance of the agreement, determines that the bank obtained a lien on the rice crop only to secure the payment of a new loan of $550.

"(2) That the bank is entitled to a lien on the original security held by it for the payment of the original debt of $5,450, and interest and attorney's fees.

"(3) I conclude that the bank was not entitled to charge off its books against the receiver any more than the amount of the new loan of $550, with interest and attorney's fees thereon, and that the balance of the funds belongs to the receiver.          Chas. E. Ashe, Judge, Presiding."

On July 26, 1914, Paul W. Joplin who had succeeded S. B. Brown as receiver, appellee herein, exceptions to the finding of the master. On the 31st day of May, 1916, the court entered a decree, as above set out.

As said by appellant, as the record is presented, the only question to be determined is the rights of appellant in reference to the lien asserted to secure the payment of the sum of $6,000 against the rice crop described in its intervention below, and as agreed to by the appellee, and using the words in appellee's brief, as they view it, the only issue involved in this appeal is whether the evidence sustains the findings of the court that the mortgage on the rice crop was intended to secure the payment of the new loan of $550, and that the note and mortgage were made for $6,000 as an accommodation to the bank for the purpose of satisfying the state bank examiner or the de-

partment of insurance and banking. In addition, there is a question of law as to whether the findings and conclusions of the master are conclusive on the trial court and on this court.

Appellant's first assignment of error is as follows:

"The court erred in its findings of fact, wherein it recites: 'I find that such payment of the note of $6,000 was intended as a matter of form, but that the real transaction should be the payment of the new loan of $550, and a continuance of the old indebtedness, upon the original security, less the bank's pro rata of any distribution which the Nursery Company could make,' because said finding is not only inconsistent with the evidence adduced in said cause, but is contradictory thereon, and not supported thereby, in that the uncontradicted evidence shows that said note for $6,000 should be paid in full, and any further loans were dependent upon a distribution or payment being made by the Nursery Company to its creditors, and that no such distribution was made."

We think it well, in addition to the above assignment, to consider with it the appellant's second assignment, which is as follows:

"The court erred in paragraph 5 of its findings of fact, wherein it holds that it was 'agreed between the bank and the Nursery Company that no preference or advantage should be given to the bank over the other creditors, but that as to the old loan, the relations of the bank and the Nursery Company should remain the same, except as to any proportionate distribution made to the creditors,' because the uncontradicted evidence shows that the payment of the $6,000 note was a condition precedent to any further loans from the bank to the Nursery Company, and that said $6,000 note was never paid, because the Nursery Company was placed in the hands of a receiver, with the consent and at the instance of the Nursery Company."

The propositions under these assignments are as follows:

"(a) Where a nursery company is indebted to a bank in the sum of $5,450, which is secured by a mortgage lien on live stock and other property, and desires to procure an additional loan in the sum of $550, which it receives from the bank, and as security therefor, in addition to the sum already due, it executes a new note in the sum of $6,000, secured by the property theretofore mortgaged and in addition thereto, by the entire rice crop grown upon land described, the court would be unwarranted in finding that the mortgage executed as last above mentioned was security for the sum of $550 only, even if the evidence shows that a reloan of the difference between $6,000, and the $550, plus the bank's pro rata portion of a distribution to creditors should be made to the mortgagor, at least when no payment whatsoever was made by the mortgagor.

"(b) In a case where all interventions have been referred to a master in chancery, whose powers are not defined by the order, and who has heard evidence and has reported findings of law and fact, and where no jury is demanded and no additional evidence introduced upon a hearing before the court to adopt the report of the master, the court is bound by the findings of the master, as a matter of fact, and as a matter of law.

"(c) Where material conditions precedent are to be performed before a contract takes effect, a showing must be made of the performance of the conditions, before either of the parties to the contract is bound."

On the contrary it is urged:

"(a) The evidence sustains the findings of the trial court that the mortgage on the rice crop was intended to secure the payment only of the new loan of $550.

"(b) Where a written instrument is but a part of a more comprehensive transaction or agreement, parol evidence is admissible to prove the part not included in the writing.

"(c) The findings of the master in chancery are not conclusive on either the trial court or the Court of Civil Appeals.

"(d) Equity looks through the form to the substance of the agreement to effectuate the intention of the parties.

"(e) The uncontradicted evidence shows that it was 'agreed between the bank and the Nursery Company that no preference or advantage should be given to the bank over the other creditors, but that as to the old loan, the relation of the bank and the Nursery Company should remain the same except as to any proportionate distribution made to the creditors."

We have given a great deal of time to the consideration of the propositions under the above and foregoing assignments. First we will consider the question with reference to whether or not the report of the master in chancery was conclusive of the matter inquired into.

Article 2150 of Vernon's Sayles' Texas Civil Statutes uses the following language:

"*Master in Chancery; Qualification; Duties and Appointments.*—The court shall, in every case of the appointment of receiver, also after his qualifying, appoint a master in chancery, who shall be a citizen of this state, and not an attorney for either party to the action, nor related to either party, who shall perform all of the duties required of him by the court, and shall be under orders of the court, and [shall] have such power as a master of chancery has in a court of equity."

As stated above, the master in chancery in the instant case was appointed shortly after the appointment of a receiver, and before the filing of this intervention, the court, as above said, entering the following order:

"T. C. Ford appointed master in chancery, to whom all interventions are referred."

It appears that there was no agreement with reference to the appointment of the master in chancery in the instant case, but that the court, acting upon its own initiative, made the appointment, and that neither party was consulted with reference to the appointment of same.

As to what are the duties of the master in chancery, and there having been no orders made by the court with reference to the matters that were referred to the said master in the instant case, we are compelled to consult his general powers and duties, as a master in chancery in a court of equity. In 26 Cyc. p. 1587, a master in chancery is defined as being "an officer of a court of chancery, who acts as an assistant to the judge or chancellor." In 16 Cyc. p. 429, with reference to masters and similar officers, the following is said:

"There were in the English chancery and there are still in most American jurisdictions, officers known as masters in chancery, who act as assistants to the court, performing both judicial and ministerial functions. Their powers are usually derived from and confined to the terms of the order of reference, but sometimes general powers are conferred. Duties usually devolving upon masters are in some jurisdictions performed by officers more or less similar in

character, but bearing different titles, such as commissioners, committees, or auditors. In so far as such officers perform the duties of masters the difference in title may be disregarded, and the title of master is therefore used generically throughout the following sections."

In line with the foregoing, Judge Williams of our Supreme Court, in the case of San Jacinto Oil Co. v. Culberson, 100 Tex. 465, 101 S. W. 197, used the following language:

"The assignments of error complain of the ruling of the trial court in admitting in evidence the master's report, and of the charge giving to it the effect of prima facie evidence, and placing upon the defendant the burden of proof upon the contested issues of fact. The Court of Civil Appeals were inclined to hold that these rulings were erroneous, but thought they could not avail the appellants because under the facts stated they were not entitled to a trial by jury. The Court of Civil Appeals held that a jury should have been demanded before the cause was referred to the master, and that in acquiescing in such reference by appearing before him and participating in the contest they had waived the right to a jury; and, further that, in order to entitle themselves to object in court to the action of the master, exceptions thereto must have been reserved before him and embodied in those presented to the court; and that, as such objections were not made before the master, it was the duty of the court to approve the report and render judgment for the amounts allowed by it. Hence it was concluded there was nothing to try when the cause was submitted to the jury. We think a sufficient answer to this position would be that, as it does not appear affirmatively from the record that the demand for a jury was not timely made, nor that the objections to the conclusions of the master were not presented before him, the presumption, from the action of the trial court in allowing a jury, should be that all that was essential to entitle the defendant thereto had been done. The parties were certainly entitled either to action upon the report of the master by the court, or to a trial by jury; and when the former course was not taken, but the latter ordered, the natural conclusion from the record is that the conditions existed to make it proper. But we do not rest our decision on so narrow a proposition. The defendant was entitled to a trial by jury of the contested issues of fact, although it had not demanded a jury before the cause went to the master, and had not reserved its exceptions before him. The question whether or not the proceeding was legal or equitable is wholly immaterial. The combined effect of sections 8 and 10 of article 5 of the Constitution is to give the right in 'all cases' and 'without regard to any distinction between law and equity,' upon demand and payment of the prescribed fee. The time for the demand, as fixed by the Legislature, is the first day of the term at which the cause is to be tried (Rev. St. 1895, art. 3189), and a jury trial at one term is not waived by the failure to demand it at preceding terms, as is made plain by the provision that at each term the docket is to be called to give parties the opportunity to make the demand (Id. art. 3192). It follows that at the term of court when the issues of fact in this cause were to be tried the defendant still had the right to have them passed upon by a jury, unless it be true, as supposed, that the facts that the cause of action of interveners, without objection, had been referred to the master, that the defendant may have appeared and contested it before him, and that it had been passed upon by him, constituted a binding and perpetual waiver of the right to a trial by jury.

"It may be true that where the state of the law is such that a party is called upon to make choice between two inconsistent modes of trial, the adoption of the benefits of one will preclude him from afterwards asserting the right to the other. In jurisdictions where the distinction between proceedings at law and those in equity is maintained, there is no jury trial in the latter, except of such issues as the court may, in its discretion, frame and submit to a jury. The court has the power to decide all questions, those of fact as well as those of law; and, to aid it in the exercise thereof, it sometimes appoints a master in chancery to investigate and report upon such matters as are submitted to him, his report being addressed to the court for its consideration, and not to a jury. Hence in such cases it is held that it is too late for a party to ask to have the issues of fact tried by a jury after he has acquiesced in a reference to and a trial by a master. No right of trial by jury is involved in such proceedings because none exists. But the right does exist in cases arising under the common law; and in states where constitutions merely protect the right of trial by jury in general terms it is held that parties to such causes cannot be compelled, with or without the aid of statute, to submit them to auditors, commissioners, or other referees. 17 Ency. Pl. & Pr. 994. But in many states statutes exist providing for such references by consent, which contemplate the substitution of those proceedings, with the action of the courts upon the reports of referees, in the place of trials by jury. It is therefore held in such cases, also, that the party who voluntarily submits to one mode of trial thereby waives the right to the other. Many decisions upon such questions are cited in 17 Am. & Eng. Ency. Law, p. 1102. But those decisions are inapplicable in this state, because of our legislation differing from that upon which they are based.

"The statute providing for the appointment of masters in chancery in receivership proceedings is as follows (Rev. St. 1895, arts. 1485, 1493): 'The court shall, in every case of the appointment of a receiver, * * * appoint a master in chancery, who shall perform all of the duties required of him by the court, and shall be under the orders of the court, and have such powers as a master of chancery has in a court of equity.' It will be observed that the appointment is to be made, and such powers as are given are to be exercised in all such proceedings without reference to the consent of the parties. Whatever the court may lawfully require the master to do, he may do without such consent; and it is therefore not contemplated that the parties shall be put to their choice between a trial before a jury and a trial before a master. As we have already seen, the Legislature cannot deprive any party of his right of trial by jury in any cause, legal or equitable, and hence this statute must be so restricted in its operation as not, by itself, to have that effect. It would have that effect if the master's proceeding be treated as a substitute for the jury trial, for it does not attempt to provide a mode in which the parties may by consent waive their right to a jury. They have no choice but to submit to the doing of the things which the court through the master may lawfully do. Obviously, in such proceeding, such a referee may render great assistance to the court in many ways without infringing upon the constitutional right of trial by jury, and the statute may therefore have a broad operation without conflict with that right; and it is to be construed as consistent with it, and not as a denial of it. When it is so construed, it follows that parties to such proceedings, by merely submitting to the course prescribed by the court under its authority, do not give a consent which it does not require them to give; in other words, that they do not consent to substitute the action of the master and of the court upon his report for that of a jury. Such a choice is not to be inferred because the statute does not require it. To still demand a jury to try the is-

sues of fact is a right secured to them by the constitutional and statutory provisions before cited. The right so to try such issues includes the right to have them determined by the jury upon legal evidence, uninfluenced by the conclusions of the master. This has long been held with reference to the reports of auditors, who are referees of the same character as masters in chancery, except that, perhaps, under our statutes, the inquiries of the former may not cover so broad a field as those of the latter. The reports of auditors, when issues of fact, raised by exceptions thereto, are being tried before juries, are not evidence upon such issues; and objections made before the auditors are neither essential nor material to such a trial. * * * The same rule must be applied to the reports of masters in chancery appointed under the receivership statute. The trial court therefore erred in admitting the report as evidence upon the contested issues, and in instructing that it was prima facie evidence of the facts found upon those issues, and the Court of Civil Appeals erred in affirming the judgment."

In the instant case, as has been seen, the court appointed a master in chancery, and when the master filed his report, exceptions were taken thereto, and from this record it also appears that other testimony was heard by the court, besides the findings of the master. The conclusions of the master were not concurred in by the court, but the conclusion was formed by the testimony itself, either the testimony admitted before the master in chancery, or upon the testimony admitted before the trial court in person.

[1] If it were necessary that upon the presentation of the matters before the master in chancery, anything should be done with reference to the filing of exceptions, the same was fully complied with in the present case, and the exceptions and objections which were quite lengthy, were fully presented, and were considered by the court. Therefore we have reached the conclusion, as to the findings of the master in chancery, more especially as they were specifically excepted to and were presented to the court, and in addition thereto other testimony was heard by the court with reference to the matters in controversy, that the findings of the master in chancery in the present case were not, either in law or equity, binding and final upon the court itself, but the matters in this case, as we believe, should, as in every case, be presented to the court by the master in chancery, who is in that respect an officer of the court to assist the court along all lines required, and bring upon the matters all the light that can be had upon the questions, but the said findings of the master in chancery do not and should not control in this state, when the same are fully excepted to, and the matters are afterward gone into and considered by the court itself.

[2] With reference to the duties of the master in chancery, therefore, in this state, where the said duties are not fully set out or indicated by the order of the court itself, the general duties are to assist the court but in no wise to supersede the action there of. We are not prepared to say—in fact we are of the opinion that the findings of fact by the lower court are reflected in the true facts, as presented by the record itself. At least, there is testimony which we believe justifies the findings of the court in this case. The legal conclusions arrived at, therefore, are warranted.

Our action upon the above assignments disposes of the case, and the other assignments, to wit, Nos. 3, 4, and 5, are with reference to matters that will not influence the conclusion arrived at, that the action of the lower court must be affirmed. Being of that opinion, and having carefully considered all of the assignments of error, same are overruled, and the action of the lower court is in all things affirmed. It is so ordered.